Case number 19-1729, Teshome Workagegnehu Appellant versus Washington Metropolitan Area Transit Authority, also known as WMATA, et al. Mr. Ward for the appellant, Mr. Cole for the appellees. Good morning. Good morning, Your Honor. This is Larry Ward representing Teshome Workagegnehu. Please proceed. Yes, Your Honor. I am before the court to represent Ms. Huata Kenwa. I want to begin by just talking a little bit about the theory that I presented to the court. We filed this suit on March 7, 2018 against WMATA for assault and battery and intentional affliction of emotional distress under the WMATA Compact. Under the Compact, WMATA is liable for torts committed by its employees while in the conduct of a proprietary function. The district court correctly found that appellate has subject matter jurisdiction under the WMATA Compact. That was indicated in the judge's opinion at page 10. I'd also like to direct the court's attention to a case that's analogous called Burkhardt v. WMATA, which is cited at 112-5-3-1207, pages 12-16-12-17. That case I'm citing for purposes of showing the existence of subject matter jurisdiction in this case, and that it was filed under a similar statute and the plaintiff prevailed in that case. I also would like to discuss- Excuse me, are you talking about sovereign immunity? Yes, ma'am. Well, I don't understand WMATA to be asserting sovereign immunity in this case. And so it's waived, isn't it? The objection is waived, so you have jurisdiction? Yes, we have jurisdiction, and I guess I'm presenting it because not only was sovereign immunity waived, but there were some questions that I thought was raised by the defendant indicating that we didn't have subject matter jurisdiction. And I think they mentioned that we didn't have subject matter jurisdiction because, well, I guess I'll go to the next point to indicate this. So let me just ask you, the case that you just cited, all right, so that rejects the Fourth Circuit's position? Ma'am, Your Honor? The case you just cited. The Burkhardt v. WMATA case? At 112 Fed Third. Yes, 112 Fed Third, 1207. It's actually, it was a DC circuit case that was, I think it's 1997, and it was a DC circuit case. It involved a passenger who was assaulted by a Metro bus driver here in DC, and the assault continued into Virginia at the Metro station. And the passenger who was deaf felt an assault and battery and intentional infliction of emotional distress claim, and he subsequently won in the DC circuit in 1997. So WMATA argues, of course, that we lack subject matter jurisdiction, but then goes on to argue that given your stipulation with Virginia, you're entitled to no further remedies, and that even if you were, you haven't included in your complaint the type of allegations that would be necessary to hold WMATA liable under the Compact. Well, I thought we did, Your Honor.  We did. I'm sorry, Your Honor? Your Honor? Yes. Yeah, we did make an allegation of assault and battery and intentional infliction of emotional distress in our complaint. I know. So the argument is that you have covered all to which you are entitled under the WMATA Compact when you sued Virginia, and your stipulation. Yes, and I'll counter to that, Your Honor, is that because this case does not arise under the Virginia Workers' Compensation Act, it falls out of the ambit of that act, and given that it falls out of the ambit, didn't you accept compensation under the Virginia Workers' Compensation Act? I'm sorry? Didn't you accept compensation under the Virginia Workers' Compensation, your client? Compensation under the act, you mean? I'm sorry, Your Honor. Could you repeat that one more time? I'm sorry. Did you not, or did your client not, accept compensation under the Virginia Workers' Compensation law? Yeah, she did, but that's a no. Yes, she did, but there's case law, which I'm gonna cite to you now, which says that you can accept compensation under the Virginia Workers' Compensation Act, and if you decide to pursue a civil suit against WMATA, you can repay the compensation that you have received, and that case is Butler v. Southern States Crop. It's at 270 Virginia 459. It's a similar case to this, in that a plaintiff, who was a- Is that in your brain? Yes, it is. It is, okay. It is, and I'll direct your attention to the, it's on page six, I'm sorry, it's on page 463 and 464, and it's at footnote two. In that case, what happened was that a young lady in Virginia was assaulted on a job by a gentleman, and she sought to file a civil suit, and she had received workers' compensation, and the lower court attempted to bar her claim for relief by arguing that a stipend, a workers' compensation stipend, had been, that she had agreed to, prevented her from seeking relief. The Virginia Supreme Court rejected that argument, stating that Butler had rights to seek post-civil relief, and the Virginia Supreme Court presented Butler with the choice of electing to pursue a civil action against her attacker for the full damages, instead of seeking benefits under the act upon repayment of any benefits she had received. So, that case is a recent case, and it's the most current statement out of Virginia by the Supreme Court on that particular issue. Does that case refer to the exclusivity provision under the Workers' Compensation Act? It does, doesn't it? Does that case, what does that case say about the exclusivity provision under the Workers' Compensation Act? Does it disclose? Yes, sir. Yes, it says that if the assault did not arise out of the, if the injury did not arise out of the assault, then the plaintiff would have an opportunity to pursue a remedy from civil court. And that's really the underlying issue in this case, that the issue is whether- I wanted to follow up on that, Mr. Ward, because it seems to me that you actually have, at the very same time you're litigating this case, you have another, you still have another workers' compensation proceeding still pending in Virginia as part of a stipulation in which your client agreed that his injuries arose out of a workplace accident. Do you have a case where someone's pursuing both tort relief and has already received and is seeking more compensation under the VWCA simultaneously? I think the Butler case addresses that, Your Honor. Does it involve simultaneous pursuit of VWCA relief and tort relief? Can you show me what page of that decision does that? Yeah, I think it's on 465. I think it's at page 465 of Butler. Yes. Oh, I only have this, let's see, I only have this SC second citation, sorry. I don't know what page it is. Yeah, it's Butler versus Southern States Co-op. It's at 270 Virginia 459. And it was decided in. No, I get that. I have a different citation. So tell me where it says that. Okay, I think it's in. Can you tell me which paragraph it begins with?  Yeah, I don't have the case in front of me, Your Honor, but I think it's on page 464. It's between 460. What I have here is simply the page numbers and. Well, but that was a case, right, where the issue was whether the injury was personal or employment related. But your client has stipulated that this accident rose, these injuries rose out of a workplace accident. We have a stipulation to that effect. That wasn't, that didn't happen in Butler, did it? Yes, it did. It certainly did. It is, it's, and I think it's, if you look at paragraph two, footnote two, I think they talk about this whole issue because the language in footnote two is similar to. Language in footnote two is just a quotation. Footnote two is just quoting the statute. Yeah, that doesn't say anything. And furthermore, in paragraph 465, what Butler says is that to the extent an employee's injury does not come within the ambit of the Virginia Act, the employee's common law remedies against his employers are preserved unimpaired. I don't see the language about paying back the worker's compensation amount and competing with suit against WMATA. It's there, but. Okay, I think if you look at, okay, I got that language from. All right, and then as Judge Black pointed out. It comes from, I'm sorry, Your Honor. It comes from. I'm sorry? Proceed, counsel. I'm sorry, Your Honor. I can't, could you repeat that for me? Let's assume for the moment that language is somewhere in Butler about repayment. Yeah, it's. Judge Millett points out Butler was talking about a sexual assault. And Virginia law has this exception for personal assault. That's not your case. But I guess what I'm saying is that the language there seems to be saying in Virginia that if you're confronted with a instance in which a plaintiff is receiving worker's compensation, and if the case has, if the case does not arise out of the job and the plaintiff decides to pursue a civil suit, then it seems to be saying that that's one of the considerations that the court. That does not arise out of the job. That seems to be a pretty big difference in that case, even if you're correct about that repayment part. But I think that the sexual assault statute, you're talking about statute section 65.1-23.1. I think what I'm saying there is that that statute would give us some guidance in terms of how to handle an instance in which a individual has gotten payment for a worker's comp, but still sues civilly. Now, have you found that language in that case that you say provides that? Well, it certainly wasn't the main threat to the case. The main threat to the case was about the assault being personal, wasn't it? I'm sorry, Your Honor, could you repeat that for me? I apologize. Have you found the language that you're relying on in that case about the repayment being important? Yeah, I think, right, I think what, that's exactly what I'm relying on. The idea is that even though the concept is not- You can't find that language, is that it? Well, the concept is not statutory, but I'm just saying that that's one of the considerations that Virginia Supreme Court would likely take into consideration if they had a case before it like this. But again, certainly- Certainly, certainly Virginia is about whether the assault was personal or job-related. Was that not the main issue in that case as opposed to what was in the other case? Right, I think that is the main issue. I think it is, it's an issue- That's not an issue in this case. But yes, right, but when you say personal, whether it was personal- No allegation here, it came out of the job, right? Yes, my allegation is that the district court misinterpreted how a injury arises out of the job, and the district court says that in order for an injury to not arise out of the job, that the person has to have some sort of personal relationship with the person who makes the assault and I think that that's a misinterpretation. I think that the actual risk test has to do with an employer imposing certain risks upon his employees. This analysis all goes to whether the incident arose out of a work accident or not. And your client has stipulated that these injuries arose out of a work-related accident. I don't know why we would go to any other analysis, all this analysis you're talking about when your client has already said in the stipulation that this did arise out of a work-related accident and is getting compensation on the basis of that stipulation. I don't understand how you can have your case- Well, I guess what I'm saying is that in the Butler case, I think that they do talk about repayment for someone who has taken work as comp and- I don't see that anywhere in Butler. I just don't see that in Butler. Maybe on rebuttal, you can give us that citation. Counsel, you're saying you don't have a copy of Butler in front of you. While we're hearing from counsel for WMATA, why don't you get the case in front of you? And give us that citation, please. Yes. All right. Okay, unfortunately, I'm at a place I can't give it in front of me, Your Honor, but I will- Well, then we can't pursue your argument at this point because none of us can find that language. And maybe counsel for WMATA can help us here. We'll come back to you on rebuttal. Okay, thank you. Why don't we hear counsel for WMATA? Morning. Morning. My name is Richard Cole and I represent the Appalachian Washington Metropolitan Area Transit Authority and Mr. Paul J. Weidefeld in his capacity as general manager. Today, we ask that this court affirm the district court dismissal of appellant's admitted complaint for four main reasons. First, the Virginia Workers' Compensation Act, the statutory language, as well as principles of res judicata bar appellant from seeking double recovery for previously compensated injuries. Second, judicial estoppel forbids appellant from taking an opposite legal position both today and in front of the district court as that would be done for the Virginia Workers' Compensation Commission in order to receive an award benefit. Hang on, did you argue, first of all, that the stipulation wasn't to a court, it was to an agency? And so I don't know how it would be judicial estoppel. And two, I was surprised not to see a judicial or some sort of equitable estoppel argument in your brief. Did I miss it? So the magic words might not be printed in the brief, but all the elements- I'm not talking about magic words. Is the word estoppel in your brief? The word estoppel is not in the brief. Okay, that's not a magic word. That's the legal theory that you're arguing. So I'm surprised not to see it, but I don't know that that's before us. Well, this court has the ability to review de novo. And the facts before it are there's a stipulated order- Well, I understand we review de novo issues decided by the district court, which tends to arise from questions and arguments presented to the district court. There's nothing for us to review de novo since you didn't make this argument, as I understand it, to the district court, but certainly not in your brief here. It seems like the powerful, equitable estoppel might be a powerful argument, but I don't see it. Your Honor, we did make the argument that he both entered into an award order in May of 2017, as well as the stipulated order that's included in the joint appendix at JA 45 through 49. Sure, that's a different argument than estoppel, but you certainly did make that argument. Okay. In any event, you certainly rely on the exclusivity of the Virginia Workers' Compensation Committee. Yeah, if I may, my point is that in order to receive compensation from the Virginia Workers' Compensation Commission, he had to make the argument that the injury was by accident, arising out of and during the course of his employment. Otherwise, his injury would not be compensable by the Virginia Workers' Compensation Commission. And respectfully, the Virginia courts do treat the Workers' Compensation Commission as a court of competent jurisdiction. And so to that first point, if I may, about the statute, section 65.2300 talks about a presumption of applying the title to injuries that occur by accident or arising out of and during the course of employment. But here, we don't need to presume anything. We have actual acceptance. We have both the award order in May of 2017 and then the stipulated order that replaces it in May of 2018. And that is for the injuries complained of and the allegations of the amended complaint, the same injuries. And the exclusivity provision states that once that you have accepted the provisions of the title to pay and receive compensation, then that shall exclude all other rights and remedies. And I agree with Judge Millett, your comment from a previous argument, that that is where the analysis should end because we have actual acceptance of the provisions of the workers' compensation title. We have payment and receipt of payment compensation benefits, which include in the stipulated order, lifetime medical benefits for all causally related treatment to the injuries complained of before the Workers' Compensation Commission. My understanding is he has a claim still pending or at least at the time of briefing, he had another claim before the Compensation BWCA agency that was still pending. Do you know what the status of that is? I do not, your honor. I met just a week ago with our workers' compensation attorneys who primarily handled that case and was not told of any pending dispute related to an application for additional compensation under the prior claim. So there may be a new case filed by a different attorney, but as far as any compensation related to the original claim and award order or stipulated order that I'm minor saying there's no dispute and this client is still receiving those medical benefits. But of course he suggests he's having trouble receiving them, all right? I mean, that is in the record book for us. And I gather some of this confusion has arisen because he's returned to work that he's gone back on disability, et cetera. But I just wanna be clear. Are you abandoning your first argument about this court lacks subject matter jurisdiction? Well, I believe the proper jurisdiction is in front of the Virginia Workers' Compensation Commission because this injury was by accident, arose out of and during the course of his employment. And because of that statutory construct, that is the proper place for his litigation related to injuries that came after. Is that a yes or no? It is a no, I'm not abandoning that argument, Your Honor. And I think that the statutory language there is just a codification of the principles of race judicata. The courts in Virginia treat an award order from the Workers' Compensation Commission as a final order on the merits, a final judgment on the merits. We have a unanimity of parties, he's suing his employer in both jurisdictions, he's suing over the same transaction and occurrence. Well, no, but I think, I mean, that may all be a great merits argument for you about sort of displacement, but we've got expressed jurisdiction under the WMATA statute. Talks about jurisdiction of courts, and we have it. The original jurisdiction, Your Honor, but subject matter jurisdiction isn't necessarily- What do you mean between original jurisdiction and subject matter jurisdiction? Original jurisdiction means that a case can be brought against WMATA, but depending on the subject matter of the case, it may not be appropriate given sovereign immunity or given other exclusive- I know, but you haven't raised sovereign immunity, so that's a jurisdictional objection, but the fact that the Virginia Workers' Compensation Act sort of displaces or forecloses his claim is not a jurisdictional argument, right? That goes to liability, but not to our authority to hold. Will we decide that this is correct, that the Virginia's Workers' Compensation Act forecloses his claim? That's a different, that's a merits- I mean, Supreme Court has been directing us for more than a decade now to be very careful about what we label jurisdictional, and I'm not aware of any authority for the proposition that this type of merits argument that you're making is jurisdictional. In fact, the Federal Tort Claims Act has an almost identical provision holding the United States government liable, consistent with state law. No one thinks that's jurisdictional. It's a merits defense. Then allow me to just concede and move on, Your Honor. To speak real quickly, I believe Mr. Workgegne, who was focused on this repayment issue, he may be talking about subrogation or WMATA's lien rights against a third-party actor. So if he were to pursue his claim against Mr. Van Buren in his individual capacity, and received a judgment of which he collected money on for the cause of his injuries, WMATA would have a right, a lien, to recover its workers' compensation outlay against that judgment. However, that's not really the case- You're just using the language in Butler that relates to the sexual assault situation. You're trying to generalize it to something that isn't covered by Butler. Yeah, I don't believe that's discussed by Butler. I don't see it discussed in Butler. I do have the case in front of me. I was rereading it. I believe it's about whether the injury in Butler was compensable under the Virginia Workers' Compensation Act in the first instance. And I believe that's where most of these cases lie. I don't believe there's a case where there's some, allowed to receive compensation under the act and also allowed to sue in court for the same injuries against the employer. Are you familiar with this Buchanan case that counsel cited this morning? I don't see it in his brief, Your Honor. It's not there. It's not there. He just cited it today. Okay. No, off the top of my head, I'm not- All right, all right. Because you did cite a Fourth Circuit case that goes exactly the other way from what counsel tells us this morning, this Buchanan decision by our court. But I don't find it in the brief either. My apologies, Your Honor. I can't- Oh, it's not cited. Yeah. I mean, if- Your apology. Well, I'm on brief. I'm happy to do so. And so to this point, the city of Richmond v. Braxton, a case relied on by appellant, the Virginia Supreme Court decided  and did not arise out of the employment. But the result was that it's just struck down the Workers' Compensation Commission award. Because in saying that the award that was granted, the commission did not, the injury didn't arise out of the employment, so the title and the benefits therein did not apply. And the remedy would then be to seek in common law or court, or he wouldn't be prevented from doing so by the exclusivity provision. But to the merits as well, this assault described in the amended- It was an injury by accident. I'm sorry. I was just kidding. Excuse me, we're getting an echo here from someone. Yeah. Or some other voice is cutting in. It's not one of the judges. Okay, okay. Sorry. It's speaking, please cease. So the assault described in the amended complaint was an injury by accident within the meaning of the act, and it as well arose out of and during the course of Appellant's employment. And then lastly, even if you do not agree that WMATA and Mr. Wietefeld should not be held vicariously liable for some act by an employee that was done outside the scope of his employment and not furthering any business or proprietary interests of WMATA. But so the case law in Virginia about what an accident, whether an accident can be an injury under the Workers' Compensation Act, it says, although the injury is a result of willful and intentional assault from either a fellow employee or a third person, that does not prevent the injury from being accidental within the meaning of the act. And that was from a 1934 Virginia Supreme Court decision, which we cited in our brief, Continental Life Insurance Company v. Go. Well, you know what I find interesting about that case is Virginia stretched the meaning of the word accidental. All right? And that was so that the injured employee would have someone from whom he could recover for these very serious injuries committed by some hitchhikers, essentially, as the dissent points out. So I thought it was interesting where the court held that if you work at a stable, you can't expect to be bitten by your friend's dog. Well, if you ever been around stables, there are dogs around there. So in any event, I thought, well, that was sort of interesting. So in this case, WMATA has no interest in having employees engage in physical combat, even when they're speaking of their job. So I wondered. I think that goes more to the arising out of question, actual risk test that was given in Lipsey. And that states that an accident arises out of employment when it's apparent to a rational mind under all attending circumstances, that a causal connection exists between the conditions under which the work is required to be performed and the resulting injury. And I think that that didn't overrule the Continental Life Insurance Company case or the one that it cited, which was Farmer's Manufacturing Company v. Warfel. And in that case- It's fairly standard workers' compensation law throughout the country, isn't it? Or at least in most states. The fact that an injury that arises out of employment that is accidental as to the injured person is not taken out from under the Workers' Compensation Act just because the third party tort pleaser was a co-employee who did it on purpose. Right. And so the courts through Lipsey, as well as these prior cases, then look to, is there that causal connection? In the Farmer's Manufacturing Company v. Warfel case, two co-employees got an argument over disposal of sawdust. And three hours later, one employee attacked the other one with a crowbar and killed him. And that was deemed compensable under the Workers' Compensation Act. And I think that that analysis has continued through case law, including Hendricks v. Walmart, which we cited in our brief, where some employee was off duty. She was on vacation. She only showed up to the store to collect a paycheck. And while she was at the store, she slipped and fell on liquid that was present. So nothing about her job should cause her to come in contact with wet liquid on a floor. By nature, she was off the clock. She wasn't even supposed to be there. But in analyzing all attending circumstances, the court found that, but for her employment and the Walmart paycheck distribution policy, that that causal connection was enough to find the exclusivity provision of the Workers' Compensation Act apply, and that suing in court was not the proper venue, that she should be before the Workers' Compensation Commission in order to receive her compensation. And- Can I ask you, first of all, there were sort of two assaults here. There was the first one, and then it stopped. The guy said, oh, we got to stop or we're going to get fired. And then when Mr. Rekogenehu stood up, he just lobbed him in the back of the head and started the assault process all over again. And how can we tell on a motion to dismiss as opposed to a summary judgment record, what all the relevant circumstances are here? According to the complaint, this assault could have came out of the blue. They weren't having a disagreement. They were having a discussion and he assaulted him. And even if you think that first round might've been tied to his work on the machines, there was then a second round of the assault. I'm just, I don't understand how this is something that can, when you keep referencing, we need to know all the attendant circumstances, that we can decide that at a 12B6 stage as opposed to summary judgment. Well, we're certainly limited to the allegations of the amended complaint and the appellant is given every inference in his favor, but the allegations are detailed. And in fact, I do believe they show a workplace argument over workplace responsibilities. Don't touch my- Not an argument. The complaint does not allege an argument. It says a discussion. And we have to take that as fact for purposes of a 12B6 stage. So let's not call it an argument. Let's call it a discussion. And it was a discussion that used for expletives. It was a, it certainly described an emotionally charged discussion, where- That's you adding words into the complaint again. Let's not add words into the complaint. I'm happy to read directly from it, but it talked about yelling. It talked about cursing at customers. It talked about telling him not to touch his machines, his expletive machines, when he was trying to do his maintenance and his repair work. I struggled to see how that does not describe an argument. Well, what if, what if it turned out that Mr. Van Buren had a mental disorder that was triggered by people threatening his authority, his perception that someone's threatening his authority. So this attack was a product of his mental disorder, which made him personally hate Mr. Worker Ganehu. Would that be personal or would that be workplace? If there was this personal motivation that was wholly divorced from his employment and his employment relationship, Mr. Worker Ganehu's employment relationship. That's just giving me, articulating a legal test back to me. What I'm asking you is assume these facts, which we don't have in the complaint. Yes. But that Mr. Van Buren has some sort of mental disorder that makes him violently react whenever someone seems to threaten his authority from his perception. It could happen at work. It could happen at home. It could happen on the street. It's just this thing that happens and it suddenly makes him burst out in personal rage at the person who, in his view, offended him. Don't tell me the test. Tell me whether that would be personal or work-related. Yes, it would be personal, Your Honor. Okay. How can we tell then at this stage when you have a complaint that says, apparently this guy used foul language, but there are people who just talk that way. We were having a discussion. Then he exploded. And then we stopped fighting. And then as I was getting up, he exploded a second time. How could that be decided on a 12B6 motion as opposed to summary judgment if we really have to get into the head of the attacker to understand what their motive was? Was it a rising out of a workplace dispute or rising out of some personal antipathy? So two points, Your Honor. The exact language of the amended complaint and the allegations are important. There was a brief verbal exchange as to each person's job responsibilities. Suddenly, Defendant Van Buren stood up in the kiosk and yelled, mother blank, I told you not to touch the machine's exclamation point and punch plaintiff in the face. I think we could have those same facts if it turned out Mr. Van Buren, if the complaint had another paragraph that says Mr. Van Buren has a severe mental disorder that causes him any time he feels threatened, whatever the perception that he has to explode in personal targeted rage. The end result would be if he didn't already accept the provisions of the title and compensation before the Workers' Compensation Commission. Right, that's a different reason. There could be a result where this did not arise out of his employment and could be compensable in a court of law, but- Or could it be that you can't always tell at the 12B6 stage that sometimes you might need to know, if you're taking every fact and every inference in favor of the complainant. I think that that's possible, but I think that you would have to rewrite this complaint. I think you would have to rewrite these allegations in order to get there, Your Honor. And if I may as well, he's not asking the court to return his award of compensation. He's not asking to return to WMATA any payment. Like you mentioned, we believe that he's just attempting to have his cake and eat it too. And in fact, footnote two of the district court's decision talked about a third workers' compensation claim being filed in August, 2018. And a counselor for the appellant wasn't sure about what happened with that. Do you know what the status of that one is? That August, 2018 filing? I do not, Your Honor. Okay, and what about his claims in his declaration that he's just not getting paychecks? He hasn't gotten a paycheck since 20, or not a paycheck, excuse me, not a paycheck, sorry, a workers' compensation check since 2018. Honestly, I can't speak to that, Your Honor. I can speak to the stipulated order, which permits him an award of benefits, of lifetime medical benefits, inclusive of some wage loss and indemnity relief. And so under the workers' comp title and cases, if he can prove that his injuries are causally, or his treatment is causally related to the injuries for which he claimed- No, but that's medical treatment. That's different from getting compensation for lost work. That award also discusses wage loss as well. Okay, you're just not aware on this, Your Honor, on your own of what the status of the latest workers' compensation filing is? Of a different claim? No, I'm not aware of a different claim. Well, I'm not sure it's a different claim, but it rises out of the same incident. Right, no, I mean, a newly filed August, 2018, I'm not aware of it. It could be a dispute as to how many weeks' compensation is he's entitled to under the act, because they're not. That is to say, even though there's been an award in the past, a workers' compensation recipient can come back asking for more weeks' compensation. Correct, and we believe that that's the proper function of the title, as well as where this case, should any dispute still exist, be litigated. And lastly, Your Honors, courts in the D.C. and Fourth Circuit routinely hold WMATA as not held liable for criminal conduct in its system, because policing and criminal acts, WMATA's immune from those claims. Section 80 of our compact is just a waiver of sovereign immunity for torts committed at its proprietary function compared to governmental function. There's nothing alleged about advancing the proprietary business interests of WMATA. Mr. Van Buren's conduct was sudden, unexpected, criminal. He knew it was not related to his employment, because he said, this could get us fired, according to the allegations in the amended complaint. And so we believe that with those facts, that you cannot hold WMATA, and then in turn, its general mandate. Responding at superiors, that's an affirmative defense. Isn't it? Yes, Your Honor. It would require a lot of fact-finding. It seems odd to get a motion to dismiss on the basis of an affirmative defense for which you would bear the burden of proof, and we're assuming lots of facts now. Well, we're taking the allegation as amended. Now your allegations, as you just described them, sounded a lot like my hypothetical, right? He couldn't have been doing this for his work. He's not supposed to do that. We don't know what made him go crazy. Right, I don't believe that- That's like my hypothetical. I don't believe that that's, the two laws are inconsistent, however, Your Honor. You had a very different description of the complaint just now than you did when I was asking you about it rising out of work. Sure, it is a fine- That seems difficult. I don't know how you can fairly read the allegations of complaint in favor of the plaintiff, both of those ways at the same time, which we would have to do to rule on that. All right, any further questions? Thank you, counsel. All right, counsel for appellant, give you a couple of minutes. Mr. Ward, can you hear me? He seems to have left the courtroom. Well, he's on the phone call. Mr. Ward is still in the courtroom. He needs to unmute himself. Mr. Ward, please press star six to unmute yourself. Good. Hello, Your Honor. Yes, you have two minutes in rebuttal. Yes, Your Honor. Number one, I don't see how one can say this case does not arise out of employment and that the felon violated a policy, a safety policy, which is preeminent in that organization. Secondly, at some point, Your Honor, if I may, I'm not at a position where I could provide you with that particular case site in which they talk about the repayment. There'll be any possibility that I could submit that to you later today? And then the third thing is that there was no- Can you give me the citation? Sorry, before you move on, can you give me the citation one more time for that case? Yes, the citation is, it's 270 Virginia 459 decided in 2005. And it is between pages 463 and 465. And there's a footnote at number, a footnote two. That's the Butler case. I thought you had a different case, a more recent Virginia case. Let me give you also another case that has some language similar to that. And that's McGreevey versus Ricodano Instruments. No, that's not the one I thought you were talking about. Nevermind. Okay, we already have that one from the briefs. All right. So those- Okay, look at 469. Yes, we have that. Okay, and- What's your third point? Okay, the third point that I was gonna make is that I do believe that this, it was not an argument as you pointed out to counsel. It was a assault. There was never an argument. And I do agree that the Continental case is a stretch in terms of counsel attempting to say that assault or injury arose out of employment. And I guess I understand- I thought I understood you to say when you first started your rebuttal that this did arise out of employment. I'm sorry, your honor? I thought I understood you to say at the beginning of your rebuttal that this did arise out of employment. Did I misunderstand you? No, our current case does not arise out of employment. Does not arise. It absolutely does not arise. Is your client wrong to have filed for worker's compensation and accepted worker's compensation? Okay, repeat it, your honor. So your client was wrong to have filed for worker's compensation and to have accepted worker's- Well, what happened there was that he was in dire straits financially. And he had, I knew, I told him there was a possibility that he may not be able to recover civilly, but he had no recourse economically. And I think that's one of the reasons. I'm assuming that the third party court here is judgment-proof, Mark, since you dismissed this to him. I'm sorry, your honor? I'm assuming that Martin Van Buren is judgment-proof. Otherwise, you'd be taking the third party court to me. Yes, he's dismissed. You dismissed him, I presume, because he's judgment-proof. Yes, we dismissed him because under the law, we had to proceed against WMATA. We could not proceed against both defendants. And he basically had a lot of issues. And quite frankly, he was not financially solvent. That's what I said, judgment-proof. And maybe there's people who- Yes. Who can't hear me anymore, but- Yes. Okay. But I do agree with Judge Rogers to the extent that I think there needs to be more discovery taken to understand the thinking that Mr. Van Buren had at that particular time. And that was one of the issues that I had by being dismissed earlier. And I indicated that to the district court judge, which is that I had heard rumor that there was some other issues with that same gentleman in the organization, but he was never reassigned or it was never resolved. All right. Thank you. We will take the case under advisement. So do I get an opportunity to submit that case to you, Yonah, later today? You can file a rule letter addressed to the clerk of the court. I close the visit with a copy of the counsel for WMATA. Great. Thank you, Yonah. Thank you.
judges: Rogers, Millett, Sentelle